98 391
41a 476

98 391
43a 60

98 391
48a 362

98 391
116 372
117 491

98 391
123 201

THE M. FORSTER VINEGAR MANUFACTURING COMPANY
v. GUGGEMOS, *Appellant.*

1. **Practice**: CONFLICT OF EVIDENCE. Where the evidence is conflicting as to the material facts and issues in a cause, it is proper for them to be considered by the jury trying it.

2. ———: OBJECTION TO EVIDENCE: EXCEPTIONS. An objection to the admission of evidence will not be reviewed in the supreme court where no exceptions were taken and preserved to the action of the court in overruling it.

3. ———: DEFECT IN INSTRUCTION, WHEN SUPPLIED. An instruction is faulty which authorizes a recovery upon the facts pleaded in the petition without reference to the facts set up in the answer, but the defect is cured where the latter facts are submitted to the jury in a separate·instruction.

4. ———: INSTRUCTION. A party cannot complain of an instruction in his own favor, which is based upon the same issue as instructions given at his instance.

5. ———: ———. Nor can he complain because an instruction submits a certain issue to the jury which is submitted by his own instruction, although the objection might otherwise be valid and well taken.

*Appeal from St. Louis City Circuit Court.*—HON. W. H. HORNER, Judge.

AFFIRMED.

*Thos. A. Russell* ·for appellant.

(1) The instructions do not correspond with the pleadings. There is nothing in the plaintiff's reply that justifies the giving of the first instruction for plaintiff. "Courts do not possess the power to change by instructions the issues which the pleadings present." *Bank v. Murdock*, 62 Mo. 70. (2) An erroneous instruction given to one party is not cured by a proper one given to the other. *State v. Laune*, 1 Mo. App. 371. (3) The instructions were not warranted by the facts. (4) The instructions were calculated to confuse and mislead the jury and were therefore erroneous. *Donahoe v. Railroad*, 83 Mo. 560 ; *Greer v. Parker*, 85 Mo. 107. (5) The instructions were inconsistent. This was error. *Price v. Railroad*, 77 Mo. 508. "If conflicting instructions be given, the judgment will be reversed."

*Stevenson v. Hancock*, 72 Mo. 612. "A contradiction between two instructions, so far from correcting the evils of either, multiplies them in both." *State v. Nauert*, 2 Mo. App. 295.

*Lubke & Muench* for respondent.

There was no error in the giving of instructions.

Ray, C. J.—This is an action by plaintiff on an account to recover a balance of $345.66 for a certain lot of vinegar sold and delivered to defendant between September 26, and November 10, 1884.

Defendant admits in his answer that he received the vinegar as charged in the petition, but denies his indebtedness therefor, and sets up by way of counter-claim that he bought the vinegar upon the guaranty of plaintiff that it would be of a certain grade, to-wit, "forty grains standard proof" suitable for pickling pigs' feet and tongues, in which business he was then engaged, and for which purpose, as plaintiff knew, he designed to use the vinegar; that in reliance upon the said agreement and representation of plaintiff, he used the said vinegar in his said business of pickling but that plaintiff knowingly delivered to him vinegar of inferior quality and less than forty grains standard proof, and that by reason of its unfitness, the whole of the product, upon which he used the same, was lost to him to his damage in the sum of ten thousand dollars.

The reply of plaintiff denied the new matter set up in the answer, and alleged further that it was understood at the time of the sale of the vinegar, that defendant would test for himself the vinegar as the same was received from time to time, and determine its fitness and suitableness for his uses; that the vinegar when delivered was of good quality and proper strength and that if it became otherwise, it was by reason of adulteration

thereof by defendant; that defendant used all the vinegar, without returning or offering to return any part thereof, and without complaint until payment was demanded.

Under the pleadings, defendant assumed the burden of proof, and claimed and was given the right to open and close the case. The trial resulted in a verdict for plaintiff in the amount sued for and against defendant on his said counter-claim, and from the judgment had thereon defendant has appealed.

It is not disputed that plaintiff agreed to furnish defendant with the vinegar, of forty grains standard proof, but plaintiff insists that the evidence shows that the vinegar furnished was of that grade ; that there is no evidence to the contrary, and for that reason the case should not be further reviewed by this court. As to this, the evidence shows that portions of the products, both pigs' feet and tongues, upon which defendant's evidence shows plaintiff's vinegar had been used, were returned to defendant by the purchasers thereof as unfit and spoiled. Defendant testifies that he examined the pigs' feet when returned, and that though sound, they had no taste, that is, that they had no sour taste, which the vinegar was designed to give, but were "just like they had been in rain water." Several witnesses testify that Mr. Wey, who was the agent of plaintiff in the sale of the vinegar and in the attempted collection of the claim, stated to defendant in their presence, that Mr. Forster, the general manager of plaintiff, knew that he sent defendant the twenty-nine grain vinegar during the last month. Defendant says that Mr. Wey stated that said Forster admitted the vinegar was only twenty-nine grains. Mr. Wey, himself, says on cross-examination, that he told defendant in the presence of the witnesses referred to that the last lot of vinegar was not over thirty grains, which he says he did because he thought it better to lose a cent on the last lot in order

to get the money. This we think suffices to show that there is evidence of a tendency contrary to that in plaintiff's behalf as to the vinegar being up to the agreed quality and standard of forty grains. Besides this the plaintiff tried the case and by instructions induced the court to declare that this was the only question in the cause.

On the other hand, the contention of the defendant, that there is no evidence that defendant agreed to test the vinegar for himself, must we think be also regarded as not well taken. The testimony of Wey, for example, is direct and positive that defendant, at the time of the sale, said he would send the vinegar back if it did not come up to the forty-grain standard, and that the understanding was that plaintiff was to furnish the vinegar in ten-barrel lots, and that defendant was to test it for himself. Defendant himself testifies on cross-examination that "it may be that I told Wey I would have his vinegar tested. I don't deny that." This is, we think, to be taken, for the jury to consider, in connection with other statements of defendant in this behalf and other evidence of a contrary tendency.

The evidence shows that defendant used the vinegar upon fresh products, that is, upon " products" not cured in brine. The defendant so testifies. There is evidence by experts that pigs' feet, put up in warm weather, and not cured in brine, will not keep and cannot be safely shipped to southern climates, and that during the time in which defendant put up his said products, the weather was in St. Louis too warm for the business of pickling fresh meat. There is also evidence that parties in St. Louis, New Orleans and other points, to whom defendant sold portions of these products put up with the vinegar in question, returned the same in a spoiled condition; that these were sold for practically nominal sums, for soap grease, and that other portions were sold at auction in New Orleans and perhaps elsewhere, as spoiled or damaged products. Evidence for

defendant tends to show that defendant had, by the time the products began to be returned, used all the vinegar except one or two barrels, and that he then first learned the inferiority of the vinegar.

As to the tongues, defendant's evidence tends to show that the vinegar was used undiluted, and defendant testifies that every barrel thereof was lost or damaged. This is in effect the testimony at least of the defendant himself. The evidence shows that defendant in using the vinegar upon pigs' feet reduced the strength thereof by diluting the same with water. Defendant testifies that he had an expert to reduce the same; that one bucket of water was added to a barrel of vinegar, and that in pickling the feet he reduced the vinegar to thirty-five grains. Other testimony shows, perhaps, that larger amounts and proportion of water were used. But there is further evidence on both sides that pigs' feet only require vinegar of the strength of twenty-nine or thirty grains, and there is evidence also in this behalf that it is usual and customary to take the higher grade of vinegar which the tongues require, and reduce the same by the addition of water for use in pickling the feet. As to the material facts and issues the evidence as thus appears was, we think, more or less conflicting, making the question involved properly for consideration by the jury.

Complaint is made in this court as to the action of the trial court in admitting portions of the testimony of the witness Otto Weber, to the effect that during the period in controversy, he bought of plaintiff some thirty barrels of vinegar and used the same in packing pigs' feet, tongues and tripe; that he had ordered the "forty-grain vinegar" and found the same good and suitable. There was further testimony by another witness in plaintiff's behalf that the vinegar sold Weber was part of the same vinegar and "taken from the same runs" as that delivered to defendant. But the objection to

the evidence, if valid, is not before us for the reason that defendant through objecting previous to the admission of the evidence failed to take and preserve his exception or objection in that behalf, after the ruling.

The record before us does not show that defendant took or preserved any exceptions at the trial to the admission or exclusion of testimony, and the only subject before us therefore is the court's action in the matter of instructions. As to these, complaint is made only as to those given for plaintiff, which are claimed to be in themselves erroneous, inconsistent with each other, as well as with those given for defendant. The first given for plaintiff tells the jury if plaintiff furnished the defendant with the vinegar sued for and that the same was used and not returned by defendant, they will find for plaintiff for the price thereof with six per cent. annual interest from demand. The petition specified the quantity and price, but not the quality of the vinegar contracted for by defendant, whilst the answer set up, as we have seen, the delivery of an inferior and unsuitable quality instead of the grade of vinegar purchased. The first instruction whilst regarding the contract as to the quantity and price, is, we think, faulty in disregarding the contract as to the quality of the vinegar which is the breach thereof and the issues tendered by the answer, but under our recent rulings the error in this behalf is cured by other instructions in the cause, in which that question is fully submitted. For example, the jury are told by the next instruction for plaintiff that there is no question before them except as to the claim of defendant that the vinegar delivered was not of the strength ordered; and the first for the defendant tells the jury that if plaintiff agreed to furnish defendant vinegar of forty grains standard proof and delivered vinegar of less strength, they should find for defendant on his counter-claim for the damages

thereby sustained. *Owens v. Railroad*, 95 Mo. 169; *Minter v. Cupp, ante* p. 26; *Hatch v. First National Bank, ante,* p. 375.

The second given for plaintiff tells the jury, as we have just seen, that there is no question before them except as to the claim of defendant that the vinegar sold and delivered was not of the strength ordered. The error and prejudice of this instruction is against plaintiff and not defendant, as it limits the inquiry exclusively to the evidence upon the issue tendered by the answer and ignores and excludes the evidence upon the issues tendered by the reply of plaintiff. Such an instruction at the instance of defendant might have afforded plaintiff ground for complaint, but the defendant cannot and ought not to object to a finding of the jury based solely upon the inquiry as to the defense set up in his answer. In the instruction given at his instance he based his right to recover altogether upon a finding by the jury in his favor upon this issue.

The third given for plaintiff denies the right of recovery to defendant upon his counter-claim upon a finding either that the vinegar delivered was according to the agreement of sale or that defendant at the time of sale agreed to determine the strength and quality thereof by his own test, or that before using defendant diluted it and made it of inferior and improper quality. Defendant contends that there is no evidence to support the second hypothesis as to defendant's agreement, if any, to determine the quality of the vinegar by his own tests. As to this, the witness Wey says, for instance, that defendant declared that he would send the vinegar back if it did not come up to the forty-grain standard; that the understanding was that plaintiff was to send the vinegar in ten-barrel lots and defendant was to test it, that after he got the first lot defendant said the vinegar was number one, and that upon a second call, he said he had no complaint to make. Again, on

cross-examination, defendant himself says : "It may be that I told Wey I would have his vinegar tested. I don't deny that." This is, we think, sufficient to meet the objection that there is no evidence in this behalf.

The same objection of a want of evidence, is urged against the third and last hypothesis in said instruction number three. It is unnecessary, in this behalf, to examine the evidence, as defendant admits the dilution of the vinegar with water, and in instructions on his part in effect submits the question to the jury whether said dilution, or reduction by water, was such as to injure, for the intended uses, the vinegar plaintiff contracted to sell and deliver to him. This, we think, precludes him from urging the said objection if otherwise valid and well taken.

We find no misdirection in the instructions to defendant's prejudice such as require a reversal of the judgment, and the same is accordingly affirmed. All concur.